## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALEXIS MANASTER-RAMER,

        Plaintiff,

vs.

        Case No. 02-CV-74683
        Hon. Denise Page Hood

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, a Tennessee
Corporation,

        Defendant.

_____/

Robert C. Zack (P22676)
Bassey and Selesko P.C.
Attorneys for Plaintiff
27777 Franklin Road, Ste. 1400
Southfield, MI 48034
(248) 355-5000

K. Scott Hamilton (P44095)
Dickinson Wright, PLLC
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500

_____/


## DEFENDANT'S SPECIAL JURY INSTRUCTION

## Defendant's Special Instruction

Under the Policies, Plaintiff cannot be considered Disabled for any period during which he was not receiving appropriate care by a physician. The Policies' requirement regarding appropriate care is unambiguous and is a requirement or a condition of coverage.

Source:  Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 985 n.4 (6th Cir. 1991) ("plaintiff was not under the care of a legally licensed physician for a psychiatric disorder from November 1983 to 1986," and "[t]herefore after November 3, 1983, plaintiff would no longer have qualified for benefits under the Plan" because "the Plan states that in order to receive benefits, an employee must be 'under treatment'... by a physician legally licensed to practice medicine"); Reznick v. Provident Life and Acc. Ins. Co., No. 03-40132 (March 31, 2005, E.D. Mich.) ("the language requiring that an insured 'receiv[e] . . . appropriate care' is unambiguous," and "[a]s the Michigan Court of Appeals noted in interpreting a policy with identical language, the receipt of appropriate care 'is actually a requirement or a condition of coverage'") (citing Morinelli v. Provident Life and Acc. Ins. Co., 242 Mich. App. 255, 260-62 (2000)).


Respectfully submitted,

DICKINSON WRIGHT PLLC

By: s/K. Scott Hamilton (P44095)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500

Dated:  April 5, 2005

Certificate of Service

I hereby certify that on April 5, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Robert C. Zack.

s/K. Scott Hamilton
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
Email: K. Hamilton@dickinsonwright.com
(313) 223-3500
Bar No. 44095

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY M. REZNICK, D.O.,                    CIVIL CASE NO. 03-40132

                    Plaintiff,             HONORABLE PAUL V. GADOLA
                                           U.S. DISTRICT JUDGE
v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, and/or
UNUM PROVIDENT CORPORATION,

                    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    INTRODUCTION

On February 3-6, 2004, the Court conducted a bench trial in this case.  The parties each submitted proposed findings of fact and conclusions of law in March 2004.  The Court now issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. These findings of fact and conclusions of law represent the Court's consideration of all of the evidence in light of the pertinent law, the Court's observation of the witnesses, and its evaluation of their demeanor, qualifications, and credibility. See Seal-Flex, Inc. v. W.R. Dougherty & Assocs., Inc., 254 F. Supp. 2d 647, 649 (E.D. Mich. 2003) (Gadola, J.).  Every finding of fact that may be construed

to incorporate a conclusion of law is hereby adopted as a conclusion of law. <u>See</u> <u>id.</u> Every conclusion of law that may be construed to incorporate a finding of fact is hereby adopted as a finding of fact. <u>See</u> <u>id.</u> The subheadings used herein are for convenience only. <u>See</u> <u>id.</u> If a finding of fact or conclusion of law is pertinent to any determination other than that indicated by the heading under which it appears, it is deemed adopted as a finding of fact or conclusion of law applicable to such other determination or determinations as may be appropriate. <u>See</u> <u>id.</u>

## II.  BACKGROUND FACTS AND STIPULATIONS

1.   Plaintiff is an osteopathic physician who is board certified in family medicine. Tr. I: 16, 18.

2. Defendant is Provident Life and Accident Insurance Company and/or UNUM Provident Corporation. <u>See</u> Final Pretrial Order.

3.   Plaintiff is an insured under Defendant's disability insurance policy number 06-337-4081450 ("the policy"), which provided a monthly benefit for total disability of $8,540.00, plus a cost of living adjustment. Stip. Fact (a) in Final Pretrial Order; Pl. Ex. 2.

4.   This dispute concerns whether Plaintiff is entitled to total disability benefits under the policy for the period of September 22, 2001 to the present. Stip. Fact (b) in Final Pretrial Order.

2

5.   The issue of residual disability benefits was not presented to the Court and the Court finds no evidence to support such a claim.  Tr. III: 96-100.

III. CONCLUSIONS OF LAW: LEGAL STANDARD AND POLICY LANGUAGE

6.   In this case, jurisdiction is based upon diversity of citizenship.  Final Pretrial Order at ¶ 1.

7.   "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state." Talley v. State Farm Fire & Cas. Co., 223 F.3d 323, 326 (6th Cir. 2000) (citations omitted).

8.   Under Michigan law, Plaintiff bears the burden of proof regarding entitlement to disability benefits under the policy. Morinelli v. Provident Life and Accident Ins. Co., 242 Mich. App. 255, 264 (2000) (insured "has the burden of proving that he was disabled pursuant to the language of the policy"); Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155, 161 n.6 (1995); Harvey Oil Co. v. Federated Mutual Ins. Co., 837 F. Supp. 242, 244 (W.D. Mich. 1993)("[t]here is no dispute that [the insured] bears the burden of proving that its claim falls within the terms of policy coverage" (citation omitted) aff'd 61 F.3d 903 (6th Cir. 1995)(unpublished table decision).

9.   "[A]n insurance policy must be enforced in accordance with its terms. [The Michigan Supreme Court] will not hold an insurance

3

company liable for a risk it did not assume." <u>Nabonsny v. Burkhardt</u>, 461 Mich. 471, 477 n.8 (2000) (citing <u>Upjohn Co. v. New Hampshire Ins. Co.</u>, 438 Mich. 197, 207 (1991)).

10.   Michigan Courts instruct that "with respect to interpreting terminology contained in an insurance contract, we must give the policy language its plain meaning, apply the definitions of terms as set forth in the contract, and when the terms are not defined in the contract give them definitions that are in accord with the common usage of the forms." <u>Henderson v. State Farm Fire & Cas. Co.</u>, 225 Mich. App. 703, 709 (1997); <u>Nabonsny</u>, 461 Mich. at 477 (The Court "will interpret the terms of an insurance contract in accordance with their 'commonly used meaning.'" (citations omitted)).

11.   If there is no ambiguity in the policy, the Court will "enforce the terms of the contract as written." <u>Nabonsny</u>, 461 Mich. at 477 (citations omitted).

12.   If there is ambiguity, "the Court will construe the policy in favor of the insured." <u>Id.</u> (citations omitted). The Court will not, however, "create ambiguity [if] the terms of the contract are clear." <u>Id.</u> (citations omitted).

13.   The Court also "take[s] into account the reasonable expectation of the parties." <u>Id.</u> (citations omitted).

14.   The policy in this case defines "total disability" as

4

follows:

> **Total Disability** or **totally disabled** means that due to Injuries or Sickness:
>
> 1.   you are not able to perform the material and substantial duties of your occupation; and
>
> 2.   you are receiving care by a Physician which is appropriate for the condition causing the disability.   We will waive this requirements when continued care would be of no benefit to you.

Pl. Ex. 2 at 4.

15.   The Policy in this case defines "your occupation" as follows:

> **Your occupation** means the occupation (or occupations, if more than one) in which you are engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

Pl. Ex. 2 at 4.

16.   The Court concludes that the language requiring that an insured "receiv[e] . . . appropriate care" is unambiguous.   <u>See</u> <u>Morinelli</u>, 242 Mich. App. at 260 & 262 (noting that identical policy language is "clear" and "not ambiguous").

17.   As the Michigan Court of Appeals noted in interpreting a policy with identical language, the receipt of appropriate care "is actually a requirement or a condition of coverage, and compliance with the condition is an issue distinct from that of the

5

elements of total disability." <u>Morinelli</u>, 242 Mich. App. at 261 (citation omitted).

18. The Court interprets the condition of "receiving care by a Physician which is appropriate" as imposing on the insured a duty to seek and accept appropriate care. For example, in <u>Provident Life and Accident Insurance Company v. Henry</u>, 106 F. Supp. 2d 1002 (C.D. Cal. 2000), the court dealt with a policy provision "requiring the insured to 'receiv[e] care by a Physician which is appropriate for the condition causing the disability.'" <u>Id.</u> at 1003. The <u>Henry</u> court held:

> [T]he appropriate-care provision here **creates an explicit duty to seek and accept appropriate treatment.** The policy provision is broad and unambiguous . . . . [T]his appropriate-care provision does not merely state the insured must be under a doctor's care. It provides the insured must receive from a doctor the appropriate care for his condition. The only reasonable interpretation of this clause is that it imposes a duty on the insured to seek and accept appropriate care for his disabling condition.

<u>Id.</u> at 1004-05 (emphasis added).

19. Another case, <u>Provident Life and Accident Life Ins. Co. v. Van Gemeit</u>, 262 F. Supp. 2d 1047 (C.D. Cal. 2003), similarly dealt with an insurance policy requiring "that an insured claiming benefits be 'receiving care by a physician which is appropriate for the condition causing the disability." <u>Id.</u> at 1049-50. The court

6

held that such a provision requires an insurer to pay benefits only if the insured accepts the care deemed "appropriate" by his physician: "A disability policy that requires an insured claiming benefits to be 'under the care and attendance' of a physician cannot reflect an intent of the parties that the insurer will be obligated to pay benefits even if the insured stubbornly refuses the only appropriate 'care' recommended." Id. at 1051.

## IV.   FINDINGS OF FACT

20. Plaintiff Terry M. Reznick's testimony lacks credibility. The Court bases this finding on the self-serving, contradictory testimony and exhibits submitted at trial, including the following:

      a.   Plaintiff's own brother, whom the Court considers credible, testified that Plaintiff has become "very erratic, very unreliable, very untruthful" since approximately 1995. Tr. I: 7, 10.

      b.   Plaintiff's statement under oath to the Arizona State Medical Board falsely stated that he had never been limited in his ability to practice. Tr. II: 37-40.

      c.   Plaintiff's statement in a form to Defendant that he was not working out of his home and was not working for pay is inconsistent with his tax records and a deduction for a home office. Tr. II:

43-47.

    d.    Plaintiff made numerous statements in affidavits, depositions, and his curriculum vitae regarding his practice that were submitted in his role as an expert witness in other lawsuits that are inconsistent with his statements made in this litigation regarding his ability to practice and the extent of his practice. <u>See</u>, <u>e.g.</u>, Tr. II at 67-69, 77, 79, 86, 88, 90, 99, 101.

21.   Plaintiff's "occupation" under the policy is practicing family medicine as an osteopathic physician, primarily focused on in-office patient care. ¶ 1, 15; Tr. I: 18, 42-44; Tr. II: 3-4, 14.

22.   Plaintiff has a psychiatric condition of bi-polar disorder with narcissistic traits that requires treatment. Tr. III: 14, 64.

23.   At the time of trial, Plaintiff had an ongoing treatment relationship with Dr. Kevin Hess, a psychiatrist. Hess Dep. at 7.

24.   Dr. Hess, who testified by deposition, is qualified to testify as an expert in the field of psychiatry. Hess Dep. at 3-5.

25.   Dr. Peter Brown, Defendant's expert, is also qualified to testify as an expert in the field of psychiatry. Tr. II: 137.

26.   The Court finds the testimony of Dr. Brown to be

credible.

27.     Although Dr. Brown did not personally interview
Plaintiff, Dr. Brown did have sufficient information from which he
could form an informed opinion about Plaintiff's condition and the
appropriateness of Plaintiff's care.  See, e.g., Tr. I: 141-42.

28.  Dr. Hess's opinion that Plaintiff is totally disabled is
based primarily on information provided by Plaintiff, and Dr. Hess
did not independently verify Plaintiff's statements.  Hess Dep. at
30-33.

29.  For example, Dr. Hess's view of Plaintiff's ability or
inability to practice medicine is "in large part dictated" by what
Plaintiff reports that he is comfortable doing, and by how
compliant Plaintiff is with treatment.  Hess Dep. at 63-64.

30.  The Court considers Dr. Hess's opinions and ability to
treat Plaintiff to be compromised by Plaintiff's lack of
credibility and self-serving tendencies.  Hess Dep. at 46-51.

31.  The Court finds the testimony of Dr. Hess to be credible,
but limited in applicability because Plaintiff, the primary source
of Dr. Hess's information, lacks credibility.  ¶ 20, 28-30.

32.     At the time of trial, Dr. Hess was prescribing for
Plaintiff two medications: Paxil, an anti-depressant, and Depakote,
a mood stabilizer.  Tr. III: 19-20.

33.  Depakote is prescribed to Plaintiff at 500 milligrams per

9

day; the typical starting dosage for this medication is 250 milligrams three times a day (for a total of 750 milligrams) and the typical therapeutic level is 1250 to 2500 milligrams a day. Tr. III: 20.

34. Plaintiff's dosage of 500 milligrams per day is less than the typical therapeutic level and would be consistent with a mild disorder. Id.

35. Plaintiff is not compliant with taking his medication as prescribed. Tr. I: 111, 123; Tr. III: 24; Hess Dep. at 17-18.

36. While a degree of noncompliance with medication is expected with bi-polar disorder, Plaintiff's noncompliance is not solely attributable to the disorder. See, e.g., Tr. III: 44.

37. Plaintiff is "not [receiving] intensive weekly psychotherapy." Hess Dep. at 38.

38. Since December of 2002 through Dr. Hess's deposition in January 2004, Plaintiff had five visits with Dr. Hess which lasted from "15 to 20 minutes to 45 to 60 minutes." Hess Dep. at 36-37. In the three-and-a-quarter years before trial, Plaintiff had approximately 12 office visits with Dr. Hess. Tr. III: 19.

39. Dr. Hess stated that Plaintiff "has made a decision that [intensive weekly therapy is] not needed at this time." Hess Dep. at 38.

40. Dr. Hess further testifies that in his opinion more

10

regular therapy sessions would be appropriate care for Plaintiff's condition, particularly given his denial and his noncompliance with his prescriptions, and that Plaintiff is not currently receiving such therapy.  Hess Dep. at 38-39.

41.  Dr. Brown testified that the current level of therapy was not appropriate; a more intensive or frequent therapy treatment would be appropriate.  Tr. III: 17-18.

42.  The Court finds that the therapy and medication prescribed by Dr. Hess is not consistently received or accepted by Plaintiff.  Hess Dep. at 40-41; ¶ 35, 39-40.

43.  Appropriate care requires a relationship between the severity of the symptoms and the level of care that is received. Tr. III: 104-05.

44.  If Plaintiff's symptoms are so severe as to preclude him from performing the material and substantial duties of his occupation, then the combination of (a) the infrequency of his therapy sessions, (b) his noncompliance with his medication, and (c) the dosage of medication prescribed entail that Plaintiff is not receiving appropriate care for an allegedly totally disabling condition.  Tr. III: 18-24.

45.  The care Plaintiff is receiving is appropriate for an individual with a mild disorder.  Tr. III: 20-21.

V.   SUMMARY: CONCLUSIONS OF LAW

46.   To summarize, a finding of total disability under the policy requires both that (1) Plaintiff is unable to perform the material and substantial duties of his occupation, and (2) Plaintiff must be receiving care by a Physician which is appropriate for the condition causing the disability. See ¶ 14.

47.   Plaintiff cannot meet both of these requirements.

48.   If Plaintiff has a psychiatric condition that <u>does</u> preclude him from performing the material and substantial duties of his occupation, (satisfying requirement (1)), then Plaintiff is <u>not</u> receiving appropriate care for the severity of the condition. See, e.g., Tr. III: 13, 116.   Thus, Plaintiff fails to satisfy requirement (2).

49.   If Plaintiff is receiving appropriate care (satisfying requirement (2)), then Plaintiff does <u>not</u> have a psychiatric condition that preclude him from performing the material and substantial duties of his occupation.   See Tr. III: 13, 65, 116; see also Tr. III: 73.   Thus, Plaintiff fails to satisfy requirement (1).

50.   Under either possibility, Plaintiff has not satisfied his burden of proving that he is entitled to total disability benefits under the policy.   Plaintiff cannot satisfy both requirements. Therefore, Plaintiff is not entitled to total disability benefits

12

under the policy.

VI.   ORDER

ACCORDINGLY, **IT IS HEREBY ORDERED** that Plaintiff is entitled to no relief and the Court shall enter judgment for Defendant and dismiss this case on the merits.

SO ORDERED.

Dated: March 31, 2005

s/Paul V. Gadola
HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  April 1, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

K. Scott Hamilton; Michael J. Kelly , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845

13